**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2022**

# In the Court of Appeals of Georgia

A22A0681. ROGERS, AS ADMINISTRATOR OF THE ESTATE
OF SONNY ROGERS v. HHRM SELF-PERFORM, LLC et
al.

GOBEIL, Judge.

During the construction of Mercedes-Benz Stadium in Atlanta, Sonny Rogers, while working for his employer, Sunshine Forming, Inc. ("Sunshine"), which had subcontracted with a joint venture to perform concrete work on the stadium, sustained injuries and later died as a result of those injuries. His sister, Abiegale Rogers, as administrator of Rogers's estate ("Appellant"),[1] sued the individual members of the joint venture, HHRM Self-Perform, LLC ("HHRM"), and other entities in tort for her

---

[1] Rogers was an incapacitated adult at the time Appellant filed the action, and he died during the pendency of the litigation. Accordingly, Appellant first filed the complaint as Rogers's next friend, then she attained the status of conservator, and finally, after Rogers's death, she prosecuted the action as administrator of his estate.

brother's injuries and death. She asserted that these entities and certain individual supervisory employees were negligent and therefore jointly liable for Rogers's injuries. After the trial court granted several of the defendants' motions for summary judgment and judgment on the pleadings, Appellant appealed, arguing that summary judgment was improper as to the individual members of the joint venture because the exclusive remedy provision of Georgia's Workers' Compensation Act, OCGA § 34-9-1 et seq. (the "Act") extends only to the joint venture itself, but not to the individual members. She also maintains that the trial court erred by concluding that the Act's exclusive remedy provision barred her suit against several individuals, employed in various safety or supervisory capacities within the defendant entities. Finally, Appellant argues that the defendants' motion for judgment on the pleadings was premature because the trial court had not yet entered a pretrial order. For the reasons explained more fully below, we affirm.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56 (c). We review the grant of a motion for summary judgment de novo, "view[ing] the evidence, and all reasonable

2

inferences drawn therefrom, in the light most favorable to the nonmovant." *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted). In evaluating a trial court's decision on a motion for judgment on the pleadings, we apply a de novo standard of review

> to determine whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. The grant of a motion for judgment on the pleadings under OCGA § 9-11-12 (c) is proper only where there is a complete failure to state a cause of action or defense. For purposes of the motion, all well-pleaded material allegations are taken as true and all denials by the movant are taken as false.

*City of Albany v. Ga. Hwy. Imports, LLC*, 348 Ga. App. 885, 887 (825 SE2d 385) (2019) (citation and punctuation omitted).

The record shows that in 2013, the Atlanta Falcons Stadium Company, LLC, entered into a contract with a joint venture (the "JV") composed of Holder Construction Group, LLC ("Holder"), Hunt Construction Group, Inc. ("Hunt"), H. J. Russell Co. ("Russell"), and C. D. Moody Construction Co. ("Moody"). On July 25, 2014, the JV entered into a contract with Skyline Forming Southeast, Inc. ("Skyline Southeast") to perform formwork and shoring for the stadium project. Skyline

3

Southeast then subcontracted with Sunshine Forming, Inc. ("Sunshine") on July 28, 2014, to perform the concrete-related formwork.

On August 19, 2014, the JV entered into a subcontract with HHRM, a limited liability company with the JV as its only member. This new contract, for completion and functional installation of "Turnkey Concrete" for the stadium project, mirrored the JV's contract with Skyline Southeast, but removed all references to "JV" and replaced them with "HHRM." Effective June 30, 2015, Skyline Southeast merged with two other entities; the surviving company was called Skyline Forming, Inc. ("Skyline"). As part of the merger, Skyline agreed to assume the aforementioned Skyline Southeast subcontracts.

On July 1, 2015, Rogers, who was employed by Sunshine, sustained injuries while he was moving a 42-foot-tall metal shoring tower. Thereafter, in June 2016, Appellant sued HHRM, Hunt, Russell, Holder, Moody, and Skyline, alleging negligent construction practices.[2] In addition to the corporate defendants, Appellant sued several individual defendants, including Donald Burr, Jose DeSantiago, and

---

[2] After filing her original complaint, Appellant filed four amended complaints. For purposes of this opinion, all references to the complaint refer to the fourth amended complaint.

4

David Garcia. These defendants were employed by Skyline/Sunshine[3] as district manager (Burr), safety manager (DeSantiago), and project foreman (Garcia). Appellant also raised claims against two supervisory employees of Holder: Steven Necessary, who worked as safety director, and Philip Agnetti, senior safety coordinator. According to the complaint, as amended, the defendants had abandoned the approved method for dismantling metal shoring towers by hand from top to bottom, and instead, based on time constraints, directed laborers to move the towers before dismantling them, using forklifts.

After the defendants answered the complaint, the Insurance Company of State of Pennsylvania filed a motion to intervene based upon medical and indemnity benefits it had paid on Rogers's workers' compensation claim ( OCGA § 34-9-11.1), which the trial court granted. Then, on July 11, 2017, HHRM, Hunt, Russell, Skyline, Burr, Garcia, DeSantiago, Necessary, and Agnetti moved for summary judgment.[4] In their motion, these defendants argued that (1) Burr, DeSantiago, and Garcia were

---

[3] Appellant alleges these men were Skyline employees during the relevant time period, but the defendants contend that Burr, DeSantiago, and Garcia were Sunshine employees. This issue is discussed in more detail in Division 3, infra.

[4] Holder, Moody, and Joseph P. Stanalonis, a safety officer for Sunshine/Skyline, against whom Appellant also filed suit, did not join the motion for summary judgment.

5

entitled to tort immunity because they were Rogers's co-workers; (2) the suit against Skyline and HHRM was barred because they were secondarily liable for workers' compensation benefits as statutory employers; (3) the individual JV members were entitled to tort immunity because they had the same immunity available to the principal contractor; and (4) Necessary and Agnetti were immune from suit because Rogers's claims against them were premised on general, nondelegable duties assigned to them by Holder (as opposed to affirmative acts, outside of the duties delegated by Holder, which increased the risk of injury).

After Appellant responded to the motion for summary judgment, she filed a request that the trial court defer its ruling until the completion of discovery. The trial court granted Appellant's motion, and several years of discovery ensued. Then, on September 16, 2020, the defendants, including Holder, Hunt, Moody, Skyline, Burr, Garcia, DeSantiago, Stanalonis, Necessary, and Agnetti filed a motion for judgment on the pleadings, arguing that even if the court were to accept Appellant's allegations as true, she nevertheless had failed to state a claim against the movants. In response, Appellant maintained in part that because no pretrial order had been entered, judgment on the pleadings would be premature.

The trial court granted summary judgment as to some defendants, and granted the motion for judgment on the pleadings as to other defendants.[5] Specifically, the trial court granted summary judgment to Skyline and HHRM on the ground that these entities were the statutory employers of Rogers because they were both secondarily liable for workers' compensation benefits in the event that Rogers was unable to recover from his immediate employer, Sunshine.[6]

As to the individual members of the JV, the court ruled that OCGA § 34-9-11 barred suit against the venturers because "every joint venturer is responsible for the workers['] compensation benefits of each employee of another joint venturer — if that employee is engaged in the activities of the joint venture." Accordingly, the trial court granted summary judgment to Hunt and Russell and judgment on the pleadings

---

[5] Recognizing the overlapping parties and issues, and differing standards applicable to the motion for summary judgment and motion for judgment on the pleadings, the trial court considered the entire record in connection with the motion for summary judgment, and addressed the motion for judgment on the pleadings only to the extent that the fourth amended complaint materially affected the grounds moved upon for summary judgment or involved different movants.

[6] Rogers received workers' compensation benefits for his injuries, and Appellant does not challenge the trial court's grant of summary judgment to Skyline or HHRM on appeal.

to Holder and Moody.[7] The trial court then granted summary judgment in favor of Necessary and Agnetti, both of whom were safety officers for Holder. Citing *Pardue v. Ruiz*, 263 Ga. 146 (429 SE2d 912) (1993), the trial court found Agnetti and Necessary were shielded from tort liability because there was no evidence that these safety officers committed affirmative acts directed toward Rogers or had direct involvement in implementing safety practices at the construction site that increased the risk of injury. Finally, the trial court granted summary judgment to Burr, DeSantiago, and Garcia, concluding that the undisputed evidence showed that these defendants were employed by Sunshine, and therefore, were immune from suit as employees of the same employer as Rogers. This appeal followed.

*1. The Individual JV Members.*

First, Appellant argues that summary judgment was erroneous as to the individual members of the JV.[8] When Appellant filed suit, she named the individual members of the JV, but not the JV itself. Even assuming the JV is entitled to

---

[7] Stanalonis also moved for judgment on the pleadings, but the trial court denied this motion.

[8] As noted above, only two members of the JV, Hunt and Russell, moved for summary judgment. However, our reasoning in this division applies equally to the remaining JV members, Holder and Moody. See Division 4, infra.

immunity as the principal contractor, Appellant argues, the individual venturers are not entitled to the same immunity because they do not have contract-subcontract relationships in the "privity tower." Put another way, Appellant contends that because the individual venturers cannot be considered "contractors" who are secondarily liable for workers' compensation benefits, they likewise do not enjoy the same tort immunity as contractors. We disagree.

Appellant's first claim involves the interplay of OCGA §§ 34-9-11 (a) and 34-9-8 (a).[9] OCGA § 34-9-11 (a), also known as the "exclusive remedy" doctrine, provides in relevant part:

> The rights and remedies granted to an employee by [Georgia's Workers' Compensation Act] shall exclude and be in place of all other rights and remedies of such employee, his or her personal representative, parents, dependents, or next of kin, and all other civil liabilities whatsoever at common law or otherwise, on account of such injury, loss of service, or death . . . .

---

[9] We are also mindful of OCGA § 34-9-23's mandate that the provisions of the Act be "construed and applied impartially to both employers and employees" and that its provisions be "liberally construed *only for the purpose of bringing employers and employees within the provisions of this chapter* and to provide protection for both." (Emphasis supplied.)

9

See also *Kellogg Co. v. Pinkston*, 253 Ga. App. 190, 191 (1) (558 SE2d 423) (2001) ("The rights and remedies of an employee against his or her employer for a work-related injury under the Workers' Compensation Act foreclose all other remedies at common law or otherwise for such injury, lost service, or death. When an employee's injuries are compensable under the Act, the employee is absolutely barred from pursuing a common law tort action to recover from such injuries[.]") (citations omitted).

OCGA § 34-9-8 (a), which delineates who is considered a statutory employer under the Act, states: "A principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer." See also *Manning v. Ga. Power Co.*, 252 Ga. 404, 405 (314 SE2d 432) (1984) ("[T]he statutory employer doctrine permits liability for workers' compensation benefits to attach vicariously against someone other than an injured employee's employer. In return, the vicariously liable party is immune from tort liability for the injury suffered."). Both of these concepts are related to the quid pro quo arrangement that underpins the no-fault structure of Georgia's workers' compensation system. See *Sheehan v. Delaney*, 238 Ga. App. 662, 663 (1) (521 SE2d

10

585) (1999) ("The fundamental principle underlying the workers' compensation system is that, in exchange for prompt payment of income and medical benefits to injured workers, employers are immune from tort liability. In creating this quid pro quo system, the legislature has determined that both employers and employees are entitled to the benefits of the Act without regard to fault.") (citations, punctuation, and emphasis omitted). Thus construing OCGA §§ 34-9-11 and 34-9-8 together, it is clear that the exclusive remedy provision of the Act extends not only to the employer, but also those deemed statutory employers.

In her complaint, Appellant alleged that the individual members "formed a joint venture . . . , combining their efforts for a profit, with all parties involved having rights of mutual control[, and] are each liable for the negligent acts and omissions of any member of the joint venture or any agent or employee of any member of the joint venture." Under Georgia law, the general laws of partnership and agency apply to joint venturers, "and each is liable for the negligence of the other." *Davenport v. Oglethorpe Power Corp.*, 196 Ga. App. 632, 633 (396 SE2d 580) (1990). "Broadly, there is a joint venture when two or more combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control, provided the arrangement does not establish a partnership." Id. (citation and punctuation omitted). In the

11

context of workers' compensation, we have held that a joint venture is not a legal entity separate and apart from the parties composing it. *Boatman v. George Hyman Constr. Co.*, 157 Ga. App. 120, 123-124 (276 SE2d 272) (1981). However, in cases involving claims by employees against employers, an employee engaged in the work of the joint venture is an employee of each of the joint venturers, and therefore workers' compensation laws are the exclusive remedy of the employees against those individual partners or joint venturers. Id. We agree that the question of privity is relevant to tort immunity, see *Yoho v. Ringier of America, Inc.*, 263 Ga. 338, 339 (434 SE2d 57) (1993) ("Since the secondary liability for workers' compensation imposed under this Code section is predicated upon the existence of the principal contractor-subcontractor relationship, [OCGA § 34-9-8 (a)] is not intended to cover all employers who let out work on contract but is limited to those who contract to perform certain work, such as the furnishing of goods and services, for another, and then sublet in whole or in part such work.") (citation and punctuation omitted; emphasis omitted). But, applying the general laws of partnership and agency to joint venturers, as we must, we conclude that under the facts presented the individual members shared in the obligation to provide workers' compensation benefits, and thus shared in the immunity afforded by the Act's exclusive remedy provision.

12

Alternatively, Appellant argues that a question of fact remains as to whether the JV is instead a partnership, and thus whether tort immunity would be conferred upon the legally existing partnership itself, rather than upon the individual members of the partnership. . In support of this argument, Appellant cites to attributes of the JV that she claims resemble a partnership, such as sharing of the risk, benefit, and profits.

In its order, the trial court found that "[w]hether a business association is classified as a partnership or a joint venture appears to be a distinction without a difference for purposes of the . . . Act," and ruled that an individual member of the joint venture would be immune from suit as the alter ego of the combined entity, regardless of the entity's classification as a partnership or joint venture. Appellant challenges this ruling, and argues that the classification is crucial to the analysis, and its resolution requires consideration of fact issues which would preclude summary judgment. See *Accolades Apartments, LP v. Fulton County*, 274 Ga. 28, 30 (549 SE2d 348) (2001) ("Whether a 'joint venture' is actually a partnership is a question of fact and depends upon the rights and responsibilities assumed by the joint venturers.").

As an initial matter, *Accolades Apartments, LP* dealt with the distinction between a joint venture and a partnership in the context of ascertaining "whether real

13

property titled in the name of a 'joint venture' is to be treated as partnership property and therefore beyond the reach of judgment creditors of individual members of the 'joint venture.'" 274 Ga. at 28. For purposes of workers' compensation coverage, however, similar to a joint venture, "[a] partnership has no legal entity aside from that of the persons who unite as partners." *Scoggins v. Aetna Cas. & Sur. Co.*, 139 Ga. App. 805, 807 (229 SE2d 683) (1976). This Court has noted that a partner of a partnership hired by an intermediate contractor as a subcontractor could not qualify as a statutory employee of the intermediate contractor under OCGA § 34-9-8 (a) to the extent he was a principal, rather than an employee, of the subcontractor partnership. *Atlas Constr. Co. v. Pena*, 268 Ga. App. 566, 567-568 (602 SE2d 151) (2004); see also *Scoggins*, 139 Ga. App. at 807 (holding that injured partner, who was injured while engaged in work for partnership, was not "employee" of partnership so as to place him into servant category intended to be protected by Workers' Compensation Act, and therefore insurer was not estopped from denying liability). In contrast, as to *employees* of a partnership, the classification of the entity as a joint venture or partnership has no bearing on the employee's entitlement to workers' compensation benefits, so long as the employee was engaged in the joint venture or partnership's business at the time of his injury. Thus, under the facts of this case,

14

where the allegations of the complaint disclose that Rogers was engaged in the business of the JV at the time he was injured, the trial court correctly ruled that the distinction between a partnership and a joint venture is of no consequence.

In sum, because the JV had no legal existence apart from the individual members, and these individual members shared in the obligation to provide workers' compensation benefits, and regardless of whether the JV was actually a partnership versus a joint venture, they are also entitled to immunity pursuant to OCGA §§ 34-9-8 (a) and 34-9-11 (a), and we affirm the trial court's grant of summary judgment to Hunt and Russell.

### 2. Necessary and Agnetti.

Appellant next challenges the trial court's grant of summary judgment to Holder's safety officers, Necessary and Agnetti.

The trial court's order rests in part on its interpretation of two Georgia Supreme Court cases that discuss tort immunity in the context of a general contractor's employees: *Long v. Marvin M. Black Co.*, 250 Ga. 621 (300 SE2d 150) (1983) ("*Long II*"), and *Pardue*, supra.

In *Long II*, an employee of an independent subcontractor sustained injuries and received workers' compensation benefits after he was accidentally injured when the

15

general contractor's employee negligently discharged a nail gun. 250 Ga. at 623. The employee brought a personal injury action against the general contractor and its employee seeking damages, and the trial court entered summary judgment in favor of the defendants, which this Court affirmed on appeal. *Long v. Marvin M. Black Co.*, 163 Ga. App. 633, 633-365 (1), (2) (294 SE2d 641) (1982). The Supreme Court reversed the grant of summary judgment to the defendants, concluding that the immunity provided to an "employee of the same employer" does not apply when "the injured employee is an employee of a subcontractor which paid compensation benefits and the alleged tortfeasor is an employee of the principal contractor." *Long II*, 250 Ga. at 623. The Court reasoned that the fact that the principal contractor was also the statutory employer did not make the injured employee and the tortfeasor employed by the statutory employer "employees of the 'same employer' within the meaning of OCGA § 34-9-11 [(a)]." Id. In sum, the claim against the general contractor was barred, but the claim against the general contractor's employee was not barred because the two employees were not employed by the same employer. Id.

In *Pardue*, a subcontractor's employees sustained injuries when scaffolding collapsed on them. 263 Ga. at 146. They received workers' compensation benefits from their employer and filed suit against the general contractor's safety officer,

16

alleging that he was negligent in failing to inspect the scaffolding. Id. The Supreme Court concluded that the safety officer's duty to inspect the premises arose only in his capacity as the employer's representative. Id. at 148. Accordingly, because the employer, who enjoyed statutory immunity, was the source of the safety officer's duty to inspect, he shared in the employer's immunity. Id. The Court noted that such "immunity would not, however, extend to the supervisor when he commits an affirmative act causing or increasing the risk of injury to another employee." Id. The *Pardue* Court thus limited its holding in *Long*, noting that: "The defendant in [*Long*] breached a general duty of care [by discharging a nail gun], not one derived from his status as an employee. The source of [the safety officer]'s duty, on the other hand, was the employer. Since the employer who owed the duty enjoyed statutory immunity, [the safety officer] shares in that immunity." *Pardue*, 263 Ga. at 148.

According to Appellant, these cases are irreconcilable and in any event, *Pardue* cannot be harmonized with OCGA §§ 34-9-8 and 34-9-11, and thus cannot extend tort immunity to Necessary and Agnetti.

To the extent Appellant argues that the Georgia Supreme Court's holding in *Pardue* "cannot be harmonized" with OCGA § 34-9-11,

17

[t]he decisions of the Supreme Court shall bind all other courts as precedents. As an intermediate appellate court, we are bound by Georgia statutes and Supreme Court of Georgia decisions. When the Supreme Court has addressed an issue in clear terms, this Court is not at liberty to decline to follow the established rule of law. It is axiomatic that this Court is bound by the precedent of the Supreme Court.

*Beasley v. Ga. Dept. of Corrections*, 360 Ga. App. 33, 42 (3) (b) n. 38 (861 SE2d 106) (2021) (citations and punctuation omitted).[10]

Thus applying *Pardue* to the facts of this case, the undisputed evidence shows that Necessary and Agnetti were employed as safety officers for Holder, a member of the JV. And, as explained in Division 1, supra, the individual members of the JV, having no legal existence separate from the JV, are considered statutory employers under OCGA § 34-9-8 (a). Accordingly, under *Pardue*, in order to withstand the motion for summary judgment, Appellant must demonstrate a triable issue of fact that Necessary and Agnetti "commit[ted] an affirmative act causing or increasing the risk of injury to another employee." 263 Ga. at 148. This she has failed to do.

---

[10] The continued viability of the Supreme Court's holding in *Pardue* was recognized by this Court as recently as 2020. See *Sprowson v. Villalobos*, 355 Ga. App. 279, (841 SE2d 453) (2020).

18

Appellant argues that both Necessary and Agnetti made "affirmative decisions" beyond the scope of their employer's non-delegable duty, Appellant's claims against them do not solely rest on "status liability," and questions of fact remain as to the decisions these defendants made. Specifically, Appellant points to Necessary and Agnetti's failure to address ongoing safety concerns pertaining to Sunshine's and Skyline's job site practices, and she maintains that neither Necessary nor Agnetti "intervened to reject the forklift procedure, or even required a documented training session from Skyline." However, these acts of nonfeasance were not directed at Rogers, nor do they constitute the sort of affirmative conduct that would subject Necessary and Agnetti to liability under *Pardue*. We therefore affirm the trial court's grant of summary judgment to Necessary and Angetti. See *Padgett v. CH2M Hill Southeast, Inc.*, 866 F. Supp. 560, 562 (M. D. Ga. 1994) (granting summary judgment to project engineer, who was responsible for general, non-delegable duty of supervision of job-site safety; denying summary judgment to job superintendent who directly informed freelance welder that area in which welder was injured was "ready for welding," when area was in fact not ready, and concluding that an issue of fact remained as to whether superintendent's statement to welder was an "affirmative act that caused or increased the risk of injury to plaintiff").

### 3. *Burr, DeSantiago, and Garcia.*

Appellant next contends that the trial court's grant of summary judgment as to Burr, DeSantiago, and Garcia was erroneous because there remain issues of fact as to the identity of these defendants' actual employer. Appellees counter that the aforementioned defendants were employed by Sunshine, not Skyline, but regardless of whether they were employed by Sunshine or Skyline, the absence of evidence that they performed "affirmative acts" that increased Rogers's risk of injury entitles them to share in the immunity granted to the statutory employer.

Under OCGA § 34-9-11 (a), "[n]o employee shall be deprived of any right to bring an action against any third-party tort-feasor, other than an employee of the same employer or any person who, pursuant to a contract or agreement with an employer, provides workers' compensation benefits to an injured employee . . . ." In his affidavit, Burr stated that he was an employee of Sunshine at the time of Rogers's accident, and that he has never been an employee of Skyline or Skyline Southeast. Similarly, DeSantiago and Garcia averred that they were Sunshine employees at the time of Rogers's injury, and had never worked for Skyline or Skyline Southeast. All three of these defendants attached W-2s to their respective affidavits indicating that

20

they were paid by Sunshine. The trial court found this evidence, coupled with deposition testimony, conclusive proof that the defendants were Sunshine employees.

According to Appellant, disputed issues of fact remain. Specifically, Appellant argues that the trial court discredited evidence showing that these supervisory employees were employed by Skyline, such as the fact that they identified themselves as Skyline employees on sign-in sheets, wore Skyline clothing, drove Skyline vehicles, and were named as Skyline employees on the company's website.

Pretermitting whether these defendants were employed by Skyline or Sunshine, they were nevertheless entitled to summary judgment. See *Serchion v. Capstone Partners, Inc.*, 298 Ga. App. 73, 76 (2) (679 SE2d 40) (2009) (this Court will affirm grant of summary judgment if trial court is right for any reason, provided that reason was argued in the trial court). Contrary to Appellant's argument that these employees undertook affirmative acts which increased the risk of harm to Rogers, and therefore are subject to tort liability under *Pardue*, the record demonstrates that these employees were acting as the alter ego of the employer.

Appellant maintains that these defendants

were instrumental in embracing and championing the profits over safety mindset that pervaded the compressed construction schedule. The use of

21

forklifts and other unsafe methods to move and disassemble scaffolding, in the quest to save time and dollars, originated with, was propagated by, and disseminated through all three.

In *Pardue*, the Supreme Court embraced the test set forth in cases such as *Cunningham v. Heard*, 134 Ga. App. 276, 277-278 (214 SE2d 190) (1975),[11] for determining whether a supervising employee should be treated as the statutory employer and thus share in the employer's tort immunity. 263 Ga. at 147 n. 1. In *Cunningham*, this Court held that the supervising employee shared in the employer's tort immunity because he was acting as the "alter ego" of the employer, as distinguished from cases where the supervisor committed "active, direct, individual action . . . specifically directed toward the employee." Id. at 277.

In the case sub judice, the contract between the JV and Skyline Southeast required Skyline Southeast to design and submit a safety program for the work to be performed, and to appoint an employee to supervise the work. As part of the contract between Skyline Southeast and Sunshine, Sunshine agreed to "erect, brace and strip the concrete form work" for the stadium project. In implementing these contractual mandates, Appellant argues that Burr, DeSantiago, and Garcia, "abandoned the

---

[11] See also *Chambers v. Gibson*, 145 Ga. App. 27, 28 (243 SE2d 309) (1978).

22

approved method for dismantling metal shoring towers [top-down,] by hand and shortly before Sonny Rogers was injured they required the Sunshine Forming laborers to use forklifts in connection with dismantling the shoring towers." In support of this argument, Appellant points to evidence that Burr, in his role as superintendent, came up with the idea to utilize the forklift method; DeSantiago, in his role as safety coordinator, conferred with Burr about the new method and drafted a written policy; and Garcia, as foreman, directed Sunshine workers to dismantle the shoring towers using forklifts in accordance with the new policy. As described in the policy, the new method was an attempt to "reduce[ ] the exposure to a lot of different hazards, including falls and sprains." There is no evidence, however, that Burr, DeSantiago, and Garcia assumed a general duty of care toward Rogers by engaging in activities wholly separate from the statutory employer-employee relationship. To the contrary, all of the activities they undertook pertaining to safety measures and shoring maneuvering — and all of Appellant's allegations of negligence — arose from the non-delegable duty their employer owed to the employees and arose from their capacities as the employer's representatives. Therefore, we decline to hold that these defendants' acts of creating and implementing general construction practices fall within the narrow "affirmative act[s]" exception to a supervisory employee's

23

immunity carved out by our Supreme Court in *Pardue*. 263 Ga. at 148 ("[Where negligence is based on a general non-delegable duty of the employer, such as supervision and safety, the supervisory employee shares in the immunity of the employer."). For the foregoing reasons, including adherence to our Supreme Court's binding precedent as discussed in Division 2, we affirm the trial court's grant of summary judgment to Burr, DeSantiago, and Garcia.

### 4. *Motion for Judgment on the Pleadings.*

Finally, Appellant challenges the grant of the motion for judgment on the pleadings in favor of Holder and Moody. OCGA § 9-11-12 (c) provides in relevant part: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Here, because the trial court had not yet entered a scheduling order or pretrial order closing the pleadings, Appellant contends the motion was premature.

In support of her position, Appellant cites to *Charles H. Wesley Ed. Foundation, Inc. v. State Election Bd.*, 282 Ga. 707, 708 (1) (654 SE2d 127) (2007), wherein the Supreme Court noted that "it is not necessary to construe the motion to dismiss as a motion for judgment on the pleadings, since the trial court has not entered a pre-trial order and, therefore, the pleadings are not, strictly speaking,

24

'closed' within the meaning of OCGA § 9-11-12 (c)." However, this statement in the Court's decision addressed a footnote in the dissent, and does not require reversal under the facts of the instant case.

> In evaluating a motion for judgment on the pleadings,

> the question before us is whether the undisputed facts appearing from the pleadings indicate that defendants are entitled to judgment as a matter of law. Where the parties moving for judgment on the pleadings do not introduce affidavits, depositions, or interrogatories in support of their motion, *such motion is the equivalent of a motion to dismiss the complaint for failure to state a claim upon which relief can be granted*. The motion to dismiss should not be granted unless the averments in the complaint disclose with certainty that the plaintiffs would not be entitled to relief under any state of facts which could be proved in support of their claim.

*Southwest Health & Wellness, LLC v. Work*, 282 Ga. App. 619, 623 (2) (639 SE2d 570) (2006) (citation and punctuation omitted; emphasis supplied). A motion to dismiss for failure to state a claim upon which relief can be granted may be filed at any point after the filing of the complaint. See OCGA § 9-11-12 (b) (6) (a motion to dismiss for failure to state a claim "shall be made before or at the time of pleading . . . "). And here, the motion for judgment on the pleadings (which did not introduce affidavits, depositions, or interrogatories in support thereof) addressed Appellant's

most recent pleading, the fourth amended complaint, to which no answer was required. See *Moore-Waters v. Met-Test, LLC*, 335 Ga. App. 761, 763 (782 SE2d 848) (2016) ("no responsive pleading to an amended complaint is required") (citation omitted). Accordingly, because we employ the same standard in evaluating a motion to dismiss for failure to state a claim or motion for judgment on the pleadings, where, as here, no supporting documents were attached to the motion for judgment on the pleadings, the fact that the defendants filed their motion before the pleadings had closed does not preclude a finding that Appellant's complaint fails as a matter of law. See *Hinson v. Roberts*, 256 Ga. 396, 397 (349 SE2d 454) (1986) (when a motion for judgment on the pleadings is premised on the insufficiency of the complaint, the motion should be granted if the allegations disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts). And, for the reasons outlined in Division 1, supra, defendants Holder and Moody, as members of the JV, were entitled to tort immunity based on the Act's exclusive remedy provision.

*Judgment affirmed. Land, J., concurs. McFadden, P. J., concurs fully and specially.*

# In the Court of Appeals of Georgia

A22A0681. ROGERS, AS ADMINISTRATOR OF THE ESTATE
OF SONNY ROGERS v. HHRM SELF-PERFORM, LLC et
al.

MCFADDEN, Presiding Judge, concurring fully and specially.

I concur fully in Divisions 1 and 4 of the majority opinion and specially in Divisions 2 and 3. I write separately to address the tension between the text of the statute and the controlling case law discussed in Divisions 2 and 3.

The statutory workers compensation bar excludes from its protection "an employee of the same employer or any person who . . . provides workers' compensation benefits[.]" OCGA § 34-9-11 (a) (brackets supplied). Those separate amendments do not provide immunity to employees of another employer — regardless whether that other employer provides workers compensation benefits that are potentially available to the injured employee. *Long v. Marvin M. Black Co.*, 250 Ga. 621, 622 (300 SE2d 150) (1983).

As written, those statutory exclusion are, in some instances, in tension with the express overall purpose of the Workers' Compensation Act.

This chapter shall be liberally construed only for the purpose of bringing employers and employees within the provisions of this chapter and to provide protection for both. This chapter is intended to provide a complete and exclusive system and procedure for the resolution of disputes between employers and employees who are subject to this chapter concerning accidents and injuries arising out of and in the course of employment as defined by this chapter. The provisions of this chapter shall be construed and applied impartially to both employers and employees.

OCGA § 34-9-23.

Case law has carved out exclusions from those statutory exclusions. "[A] general duty of care" has been distinguished from "one derived from [the alleged tortfeasor's] status as an employee." *Pardue v. Ruiz*, 263 Ga. 146, 148 (429 SE2d 912) (1993). Case law has drawn a "distinction between an affirmative breach of duty and an act of passive negligence (nonfeasance) in [the alleged tortfeasor's] representative capacity." Id. at 147. This court has held that where "an executive of a corporation acts in his representative capacity as the alter ego of the corporation an employee injured in the course of his employment may not . . . sue the executive of the corporation in tort[.]" *Chambers v. Gibson*, 145 Ga. App. 27, 28 (243 SE2d 309) (1978). Accord *Hay v. Britt Realty*, 174 Ga. App. 214 (329 SE2d 544) (1985); *Vaughn v. Jernigan*, 144 Ga. App. 745 (242 SE2d 482) (1978). The alter ego doctrine appears[1] to have been adopted by the Supreme Court's

---

[1]I qualify that assertion because the *Pardue* court addressed the alter ego doctrine in a paragraph that summarized the contentions of the petitioner before it.

Petitioner relies on a distinction between an affirmative breach of duty and an act of passive negligence (nonfeasance) in his representative capacity. His failure to inspect the scaffolding was nonfeasance while acting as the *alter ego* of the employer. He contends that something beyond nonfeasance in the duty of general supervision is required to

3

decision in *Pardue*, 263 Ga. at 147. I am in doubt about the scope and relationship among those case law exclusions. But they are now a matter of Supreme Court case law.

Here appellees' counsel has persuasively argued that allowing plaintiffs to attack a corporation's risk/benefit decisions by suing the employees who made and implemented those decisions would seriously undermine the purpose of the Workers' Compensation Act. So I am satisfied that the alter ego doctrine obtains.

---

> impose liability on an employee because that is a duty owed by the employer to its employees. *We agree*. Where, as here, the duty breached by the supervisor is a nondelegable duty of general supervision or of providing a safe workplace, the employee shares in his employer's tort immunity.

*Pardue*, 263 Ga. at 147 (citations omitted, emphasis added).

But there is no mention of the alter ego doctrine in the concluding paragraph that announces the court's holding. Indeed, read in isolation, that paragraph suggests, as the appellant here contends, that an employee can overcome the bar by proving an affirmative act.

> Therefore, we hold that where negligence is based on a general non-delegable duty of the employer (such as supervision and safety), the supervisory employee shares in the immunity of the employer. This immunity would not, however, extend to the supervisor when he commits an affirmative act causing or increasing the risk of injury to another employee.

Id. at 148.

4